UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

VISTA CLINICAL DIAGNOSTICS, LLC
and DAVIAN SANTANA,

    Plaintiffs,

v.                                        Case No: 6:17-cv-1491-Orl-41TBS

PETAR MARKOVIC and JAVIER DEL
HOYO,

    Defendants.

## REPORT AND RECOMMENDATION

Pending before the Court are Plaintiffs' Application for Attorney's Fees and Costs (Doc. 86), Plaintiffs' First Amended Application for Attorney's Fees and Costs (Doc. 88), Defendants' response (Doc. 89), and related exhibits and affidavits (Docs. 86-1; 88-1; 88-2; 88-3; 90; and 91). Plaintiffs seek an award of fees "pursuant to Federal Rules of Civil Procedure 54, 28 U.S.C. §1927, and Local Rules of the Middle District of Florida 4.18." Upon review, I respectfully recommend that the motions be **DENIED to the extent they seek an award of attorney's fees,** and **DENIED, without prejudice, to the extent they seek an award of costs under 28 U.S.C. §1920.**

### Background

Because the timeline is pertinent to the issues raised, the following undisputed facts are set forth in detail.

Plaintiff Vista Clinical Diagnostics, LLC ("Vista") is a Florida limited liability company that, among other businesses, engages in the development of high value

commercial real estate (Doc. 1, ¶¶ 1, 8).[1] Plaintiff Davian Santana is the manager and sole owner of Vista (Doc. 1, ¶ 1). Melbourne Australia Holdings, LLC ("MAH") is a Florida limited liability company which owns certain real property located in Melbourne, Florida ("the subject property"). Vincent Soulsby is an authorized member and manager of MAH. (Id., ¶ 12). MAH and Mr. Soulsby are not parties here.

On July 17, 2014, MAH entered into a lease of the subject property to Vista, expressly conditioned upon completion of a build-out and obtaining a certificate of occupancy within 12 months from the date of execution of the lease (Id., ¶ 13). MAH did not complete the required build-out and Vista never took possession, paid rents, or became obligated on the July 2014 Lease. (Id.).

On December 18, 2014, MAH mortgaged the subject property to Defendant Javier Del Hoyo (Id., ¶ 14). On November 19, 2015, Mr. Del Hoyo executed a satisfaction of that mortgage (Id., ¶ 17). The next day, MAH mortgaged the subject property to Defendants Javier Del Hoyo and Petar Markovic, for $2,250,000 (Id., ¶ 15). The November 20, 2015 mortgage was prepared by Howard A. Ross, a suspended New York attorney.[2] In November 2016, MAH defaulted in its payments due on the November 20, 2015 mortgage (Doc. 1, ¶ 18).

On November 17, 2016, Mr. Soulsby, as manager of MAH, received an email from Mr. Ross, who was purporting to represent and act on behalf of Defendants. Mr. Ross' email stated:

> Vince, Just a reminder that your loan matures and is payable in full on November 20, 2016 ... We have conducted conflict

---

[1] Although the complaint was filed under seal, its averments have been freely stated by both sides in open filings, including the pending motions and response. For this reason, they are referenced (to the extent they are pertinent) in this Report and Recommendation.

[2] Mr. Ross is not licensed to practice in Florida and his license was suspended in New York at all times pertinent here. See Doc. 1, ¶16 and Deposition of Howard A. Ross (Doc. 87).

- 2 -

>> clearance with a law firm in Orlando. That firm will be officially retained on December 1st to proceed with: foreclosure proceedings against Melbourne Australia Holdings, LLC; a collection action against you personally pursuant to your guaranty of the subject indebtedness; an action against Vista [Clinical Diagnostics, LLC] under the assignment of rents and leases contained in the mortgage which action will be brought to enforce Vista's responsibilities under its lease of the subject property including its failure to build out the property and its failure to pay rent pursuant to that lease; and a collection action against Davian Santana pursuant to his personal guarantee [sic] of the Vista lease.

(Doc. 1, ¶ 19).

On November 17, 2016, Mr. Ross gave Plaintiffs copies of three documents which purport to bear Davian Santana's signature: (1) an Estoppel Certificate dated December 12, 2014; (2) a Lease Guarantee dated November 19, 2015; and (3) a second Estoppel Certificate dated November 20, 2014 (Id., ¶ 20) (collectively, "the disputed documents").

On November 18, 2016, Plaintiffs, through counsel, sent a letter to Mr. Ross and the Defendants, stating that Davian Santana's purported signatures on the disputed documents were forgeries and that Plaintiffs had no contractual, equitable, or other relationship to the mortgage MAH had given to Defendants (Doc. 88 at 5).

In early 2017, Plaintiffs obtained affidavits from the claimed witnesses to the disputed documents and the notary public, all stating that they were not present when the disputed documents were signed and their signatures were not authentic.

Plaintiffs also obtained a report from a forensic document expert ("the first opinion") on February 18, 2017 (Doc. 1-13 – sealed). The expert opined that, while it was "not possible to conclusively identify the signer of a document when no inked original can be produced," the signatures of the witness, Keith Davenport, and that of Davian Santana, were not authentic and were likely forgeries (Id.).

- 3 -

Plaintiffs provided all of this information to Defendants' lawyer, Joe Dillon (Doc. 88, pp. 5-6). Mr. Dillon felt the first opinion was inconclusive because it relied on a copy of the document rather than the original, and because the expert said he could not rule out the possibility that the signature was a "copy and paste fabrication." (Doc. 89 at 8; Doc. 91 at ¶ 5).

On or about August 15, 2017, Plaintiffs filed their Verified Complaint for Declaratory Judgment and Injunctive Relief (sealed) and their Verified Motion for Emergency Temporary Restraining Order (Docs. 1, 3 - sealed). Plaintiffs alleged that Defendants intended to file suit against them on August 16, 2017, to enforce the mortgage and disputed documents (Doc. 3 at 3).The Court granted Plaintiffs' Motion for Temporary Restraining Order and set the matter for hearing (Doc. 6).

In September 2017, Defendants contacted a handwriting expert to analyze the disputed documents and provide an opinion whether the signatures of Santana were authentic (Doc. 91 at ¶ 6 – "the second opinion"). At the hearing on Plaintiffs' Motion for Preliminary Injunction on October 4, 2017 (Doc. 75), Mr. Dillon informed the Court that his expert "says exactly what their expert says, essentially ... which is he [Santana] can't be ruled out." (Doc. 75 at 9).[3] In addition to retaining this expert, prior to the October 4th hearing, Mr. Dillon performed an investigation into the relationship between the parties and "determined that Plaintiffs had previous business dealings with Defendants and that Santana was a partial owner of [MAH]" (Doc. 91 at ¶11).

---

[3] According to Mr. Dillon's affidavit, his expert opined that further investigation was necessary and that more known handwriting samples should be obtained and evaluated before the expert could reach a strong conclusion as to the authenticity of the signatures (Doc. 91 at ¶¶ 7-8).

- 4 -

Defendants filed a response in opposition to Plaintiff's Motion for Preliminary Injunction (Doc. 29) but, at the hearing, they stipulated to continue the temporary restraining order in place until the next hearing (Docs. 30-32).

On October 24, 2017, an action to foreclose the mortgage on the subject property was filed in the Eighteenth Judicial Circuit, in and for Brevard County, Florida. Vista and Santana were not named as defendants in that action (Doc. 89, pp. 4-5).

On November 20, 2017, Defendants consented to the entry of a Preliminary Injunction through the date of trial in this Court (Docs. 37, 73).

On December 28, 2017, Defendants filed their answer and affirmative defenses to the complaint (Doc. 42). They also continued their investigation into Plaintiffs' allegations of forgery. Defendants contracted with a second handwriting expert to analyze the signatures on the disputed documents (Doc. 91 at ¶¶ 13-14 – the "third opinion"). On February 1, 2017, this expert informed Mr. Dillon that Santana did not author the signatures on the disputed documents. Based on this information, Defendants "determined that it was not in the best interest of any of the parties to continue to contest this matter." (Id.).

On February 7, 2018, six days after receipt of the third opinion, Defendants filed their Notice of Stipulation to Judgment (Doc. 52), and an emergency motion for protective order from depositions (Doc. 53). The emergency motion was denied on procedural grounds (Doc. 55). The motion was renewed (Doc. 56) and again denied (Doc. 58). On February 9, 2018, following Mr. Del Hoyo's non-attendance at his scheduled deposition, Plaintiffs filed a motion to compel Mr. Del Hoyo's attendance at his deposition, and requested sanctions (Doc. 59). No response was timely filed and the motion was granted, with costs of the attempted deposition taxed against Mr. Del Hoyo (Doc. 62). Defendants

- 5 -

moved for reconsideration (Doc. 63), which was denied (Doc. 69). On april 4, 2018, following additional submissions, $4,250.00 in attorneys' fees and $4,760.58 in costs were awarded to Plaintiffs and taxed against Mr. Del Hoyo due to his failure to attend his deposition (Doc. 79).

On February 22, 2018, while the motion to compel was pending, Defendants filed an amended answer advising that they were "no longer challenging the relief sought in Count I and Count II of the Complaint," except they asserted that there was no basis for an award of attorneys' fees or costs (Doc. 61 at p. 4).

On April 26, 2018, the parties filed a Joint Motion for Entry of Final Judgment (Doc. 82). On May 1, 2018, this Court entered its Order and Permanent Injunction, declaring the disputed documents to be forgeries and unenforceable (Doc. 84). On May 2, 2018, this Court issued its Judgment in a Civil Case in favor of Plaintiffs (Doc. 85). The Order and Permanent Injunction directed the parties to confer regarding attorneys' fees and costs and, "[i]f the parties are unable to agree, Plaintiff shall file a motion for attorneys' fees and costs on or before May 31, 2018." (Doc. 84, ¶ 5). The pending motions followed.

## Discussion

Plaintiffs claim a right to an award of attorneys' fees because Defendants "by and through their representative" Howard Ross, "have acted in bad faith, vexatiously, and wantonly by representing to this Court and to Plaintiffs through their actions and pleadings that legal documents Defendants knew were forgeries were authentic." Plaintiffs claim that Defendants acted in bad faith by "knowingly and coercively threatening to enforce the Forged Documents against Plaintiffs, knowing that they would destroy Plaintiffs' businesses and Plaintiffs' reputations." (Doc. 88 at 2). Plaintiffs claim they should be awarded their attorneys' fees pursuant to this Court's authority under

Federal Rules of Civil Procedure 54[4] and 11, 28 U.S.C. §1927, and this Court's inherent power.

*Attorneys' Fees*

*Rule 11*

Federal Rule of Civil Procedure 11 states in part:

> By presenting to the court a pleading, written motion, or other paper–whether by signing, filing, submitting, or later advocating it–an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
>   ...
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

FED. R. CIV. P. 11(b)(1), 11(b)(3), 11(b)(4). Federal Rule of Civil Procedure 11(c) provides:

> (c) Sanctions.
>
> (1) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

---

[4] As Rule 54 does not provide a substantive right to fees, it is assumed Plaintiffs are referencing the portion of the rule which sets forth the procedural aspects of seeking an award of attorney's fees. See FED. R. CIV. P. 54(d)(2). To the extent this rule also addresses costs, it is discussed further *infra*.

> (2) Motion for Sanctions. A motion for sanctions **must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.** If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.
>
> (3) On the Court's Initiative. On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

FED. R. CIV. P. 11(c) (1), (2) and (3) (emphasis added).

Rule 11 sanctions are proper "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." Worldwide Primates, Inc. v. McGreal, 87 F.3d 1252, 1254 (11th Cir. 1996) (internal citation omitted).

> In this circuit, a court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous–in view of the facts or law–and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry. Id. If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound. Id. The reasonableness of the inquiry "may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the [violative document]; ... or whether he depended on forwarding counsel or another member of the bar." Ousley Productions, 952 F.2d at 382 (quoting Advisory Committee Note to Rule 11, as amended in 1983).

Worldwide Primates, 87 F.3d at 1254.

The imposition of Rule 11 sanctions against Defendants and their counsel is not warranted as Plaintiffs do not show that they complied with the "safe harbor" provision of the rule. See FED. R. CIV. PRO. 11(c)(2). Plaintiffs acknowledge this fatal defect in their motion. See Doc. 88 ("Although relief pursuant to Rule 11, may be unavailable to Plaintiffs at this time in the proceedings ..."). Even if Plaintiff had complied with the safe harbor requirement, I am not convinced that the alleged misconduct cited as a basis for Rule 11 is, in fact, sanctionable.

Plaintiffs claim that defense counsel committed a "straightforward Rule 11 violation" by failing to perform a reasonably thorough and objective investigation of the facts before making representations to the Court that he *believed* the documents to be authentic. I disagree. The facts, as established, are that Defendants received documents which were ultimately found to be forged. There is no suggestion that Defendants forged the documents; nor is there a suggestion that Defendants knowingly accepted forged documents in connection with the mortgage transaction. Indeed, Defendants were victims of the forgery – having made a loan in reliance on what turned out to be bogus credit support. Plaintiffs admit that "[b]y the date of the October 4, 2017 hearing, it would have been obvious to counsel for Defendants that neither Defendant, nor their representative had any direct knowledge of the circumstances surrounding the signing of the Forged Documents" (Doc. 88 at 16); yet Plaintiffs seek to impute perfect knowledge of the fraudulent circumstances to Defendants. This is not the Rule 11 standard. Defendants held documents which purported to be genuine. The Court cannot fault Defendants or defense counsel for seeking independent proof of the forgery before relinquishing any

- 9 -

claims under the disputed documents. Their conduct was not objectively unreasonable.[5]

*Section 1927*

Under 28 U.S.C. § 1927, "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." There are three essential requirements that must be satisfied with respect to a fee award under § 1927: "First, the attorney must engage in unreasonable and vexatious conduct. Second, that unreasonable and vexatious conduct must be conduct that multiplies the proceedings. Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, *i.e.,* the sanction may not exceed the costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Peterson v. BMI Refractories, 124 F.3d 1386, 1396 (11th Cir. 1997) (citations and quotation marks omitted).

I have already determined that Defendants and their lawyer did not act unreasonably. Now I find that they did not act vexatiously to multiply the proceedings. Plaintiffs, not Defendants, brought this lawsuit and, despite Defendants' conclusion that "it was not in the best interest of any of the parties to continue to contest this matter," Plaintiffs, not Defendants, continued it.[6] "Under the plain statutory language, objectionable conduct–even unreasonable and vexatious conduct–is not sanctionable

---

[5] Plaintiffs "proof" of bad faith is that Mr. Ross testified in deposition that Mr. Soulsby told him that Mr. Soulsby had forged Mr. Santana's signature prior to the filing of the foreclosure action against MAH on October 24, 2017. Mr. Ross discussed this statement by Mr. Soulsby with then counsel, Mr. Dillon (Doc. 88 at 16). But, even if Defendants agents were told this by Mr. Soulsby, it was not unreasonable for Defendants to seek to verify this information.

[6] I do not suggest that Plaintiffs' initial actions immediately following Defendants' filing of the Notice of Stipulation to Judgment were unreasonable or inappropriate. Plaintiffs were also victims of the forgery, and, like Defendants, were entitled to investigate.

unless it results in proceedings that would not have been conducted otherwise." Peterson, 124 F.3d at 1396. While Defendants could certainly have acted more expeditiously in investigating this matter prior to the filing of the lawsuit,[7] the facts show that, once the suit was filed, Defendants undertook an investigation and within a week of receiving conclusive evidence of the forgery, they stipulated to the entry of judgment. The requirements of Section 1927 are not met.

*Inherent Power*

A court may sanction an attorney pursuant to its "inherent power" to police behavior that undermines the judiciary's ability to achieve the just, orderly, and expeditious disposition of cases. See Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). "The key to unlocking a court's inherent power is a finding of bad faith." In re Engle Cases, 283 F. Supp. 3d 1174, 1242 (M.D. Fla. 2017) (quoting Barnes v. Dalton, 158 F. 3d 1212, 1214 (11th Cir. 1998)). "The standard is a subjective standard with a narrow exception for conduct tantamount to bad faith. Furthermore, recklessness alone does not constitute conduct tantamount to bad faith." Purchasing Power, LLC v. Bluestem Brands, Inc., 851 F.3d 1218, 1223 (11th Cir. 2017). In the absence of direct evidence of subjective bad faith, this standard can be met if an attorney's conduct is so egregious that it could only be committed in bad faith. Id. at 1224-25 (citing Roadway Exp. Inc. v. Piper, 447 U.S. 752, 767, 100 S. Ct. 2455, 65 L.Ed. 2d 488 (1980). An attorney's conduct is "tantamount to bad faith" if he "recklessly raises a frivolous argument." Id. at 1225 (quoting Barnes, 158 F.3d at 1214). "Recklessness alone

---

[7] Section 1927 does not apply to pre-suit conduct. See Macort v. Prem, Inc., 208 F. App'x 781, 786 (11th Cir. 2006) ("As an initial matter, the language of § 1927 makes clear that it only applies to unnecessary filings after the lawsuit has begun.").

does not satisfy the inherent powers standard," but "recklessness plus a frivolous argument suffice." Id.

Plaintiffs have not shown the type of subjective bad faith or egregious conduct necessary to unlock the Court's inherent authority to sanction. Although Plaintiffs make much of what they claim Mr. Ross or Mr. Dillon "knew," the timeline shows that until receipt of the third expert opinion, Defendants can only be charged with knowledge of Plaintiffs' position that the documents were forged. Absent any evidence or allegation that Defendants or their counsel were personally involved in the procurement of forged documents, Defendants were not required to immediately concede that the disputed documents were forgeries, but were entitled to conduct a reasonable investigation into the allegations. It appears that this is exactly what they did. I find no bad faith or conduct tantamount to bad faith here.

Under the "American Rule," the prevailing party is ordinarily not entitled to collect a reasonable attorney's fee from the loser. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 95 S. Ct. 1612, 1616, 44 L. Ed. 2d 141 (1975). While there are some exceptions to the general rule, such as a right to fees under statute or contract, no such exception is shown to apply here. The unfortunate fact is that someone who is likely not a party to this case[8] forged the disputed documents. Plaintiffs seek to shift their attorney's fees incurred in containing the resulting damage to Defendants. While I am not unsympathetic to Plaintiffs' position, absent any evidence that Defendants were involved in the forgery, there is no basis for such an imposition. The motions for an award of attorneys' fees should be **DENIED.**

---

[8] While the Court has declared the documents to be forgeries, it is not prepared to identify the forger, as that issue was not presented by these papers.

*Costs*

Pursuant to Federal Rule of Civil Procedure 54(d), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party." See FED. R. CIV. P. 54(d)(1). "Usually the litigant in whose favor judgment is rendered is the prevailing party for purposes of rule 54(d)." Head v. Medford, 62 F.3d 351, 354 (11th Cir. 1995). Under Title 28 U.S.C. §1920, a court may award the following as costs:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed and electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. A court may not award costs in excess of those authorized by statute as "federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437, 445, 107 S. Ct. 2494, 2499, 96 L. Ed. 2d 385 (1987).

Plaintiffs are the prevailing party and are entitled to recover costs. They have presented a Bill of Costs but, they seek an award well outside the allowable categories under § 1920 (Doc. 88-2, see also Doc. 88-1, pp. 7-8). Plaintiffs ask for fees for their expert, who was not court-appointed, and to recover hotel expenses, travel, and express mail costs, none of which are shown to be within the allowable scope of the statute. Even

with respect to allowable categories, Plaintiff's papers are insufficient to determine whether the costs claimed are properly within those categories.[9] And, from the few papers filed, the Court cannot ascertain whether Plaintiffs are excluding costs they have already been awarded with respect to Mr. Del Hoyo's aborted deposition. On this showing, I recommend Plaintiffs' motion for costs be **denied, without prejudice** to the filing of a revised Bill of Costs setting forth only Section 1920 compensable expenses not already awarded by the Court. If taxed by the Clerk under the rule, any further review should proceed by motion, as set forth in Rule 54(d)(1), in the usual course.

## Recommendation

For the foregoing reasons, I respectfully recommend that:

(1) Plaintiffs' Application for Attorney's Fees and Costs (Doc. 86) be **DENIED, as moot;**

(2) Plaintiffs' First Amended Application for Attorney's Fees and Costs (Doc. 88) be **DENIED**, except that Plaintiffs be permitted 14 days to file a fully supported Bill of Costs consistent with 28 U.S.C. § 1920.

## Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

---

[9] For example, transcripts of hearings are not shown to be necessarily obtained for use in the case.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on June 27, 2018.

*[signature]*

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record
    Unrepresented Parties